# In the United States District Court
## for the Southern District of Georgia
## Brunswick Division

LATANYA SPRIGGS,

    Plaintiff,

    vs.                                                CV 213-051

MERCEDES BENZ USA, LLC,

    Defendant.

## ORDER

After working for Defendant Mercedes Benz USA, LLC, for ten years in Belcamp, Maryland, Plaintiff Latanya Spriggs applied for, was offered, and accepted a transfer to Mercedes Benz's Vehicle Processing Center in Brunswick, Georgia. She was fired less than a year later. At issue in this case is whether Plaintiff's managers were motivated to fire her because she is black and whether they retaliated against her for complaints she made about racial discrimination at the workplace. Presently before the Court is Defendant Mercedes Benz's Motion for Summary Judgment for all four of Plaintiff's claims. See Dkt. no. 30. Because the Court finds that Plaintiff has presented sufficient evidence to create a triable issue of fact as to whether her

AO 72A
(Rev. 8/82)

managers fired her with discriminatory intent, Mercedes Benz's motion is **DENIED** as to Counts I and III. Defendant's Motion is also **DENIED** as to Counts II and IV, but only as to the allegations within those Counts that Mercedes Benz fired Plaintiff in retaliation for her verbal complaints about workplace discrimination to her managers. Summary judgment is **GRANTED** as to those allegations in Counts II and IV that Mercedes Benz retaliated against Plaintiff because of her written complaints, and that Mercedes Benz retaliated against Plaintiff by making false statements about her to prospective employers.

## I.   FACTUAL BACKGROUND

Plaintiff began working at Mercedes Benz's Vehicle Processing Center ("VPC") in Belcamp, Maryland on October 29, 1999. Dkt. no. 40, ¶ 1. During her time in Belcamp, Plaintiff worked as a Mechanical Helper, and her work earned her at least one raise and two promotions. See id.; Dkt. no. 34-3 ("Spriggs Dep."), 57:1-3, 57:24-58:7. In 2009, Plaintiff applied for a transfer to the VPC in Brunswick, Georgia to work as a Parts Person. Dkt. no. 40, ¶¶ 3, 4. Richard Whitmore—manager of VPC Brunswick—interviewed Plaintiff and hired her over other applicants. Id. at ¶ 4. Plaintiff began working at VPC Brunswick on January 4, 2010. Id. at ¶ 9.

AO 72A
(Rev. 8/82)

As a VPC Parts Person, Plaintiff was responsible for receiving and ordering vehicle parts. Id. at ¶ 12. This job required her to communicate and work with various staff members at VPC Brunswick. Id. She reported directly to her supervisor, Charles Taylor, the Repair Shop Foreman. Id. at ¶ 13. Taylor reported to VPC Supervisor Richard Gerhart, who in turn reported to VPC Manager Whitmore. Id. at ¶¶ 16, 17.

### a. Alleged Discriminatory Treatment

Plaintiff alleges that shortly after she began working at VPC Brunswick, her managers began to treat her in a discriminatory manner compared to how they treated white employees. Dkt. no. 1, ¶ 15. In her complaint, Plaintiff tells of various workplace altercations and interactions where she felt discriminated against. This alleged mistreatment includes the management's refusal to listen to her ideas during management meetings, her supervisors' failure to respond to emails or to otherwise communicate with her regarding issues pertinent to her job function, and racially-charged comments and insults about Plaintiff's work attire, her husband (who also works at VPC Brunswick), and her interactions with other VPC Brunswick employees. Plaintiff concludes that her race was a factor in her termination "because the way that [she] had been treated for most of [her] employment there in Brunswick and how [she] was being treated by management, how they [were] singling

AO 72A
(Rev. 8/82)

[her] out as opposed to the white employees." Spriggs Dep. 151: 1-5.

### i. Treatment at Staff Meetings

Plaintiff alleges that "[a]t management meetings, . . . management refused to listen to any of her ideas and suggestions for improving the parts process." Dkt. no. 40, ¶ 124. Plaintiff testified that these meetings were "hard to sit in" because some individuals would act aggressively towards her and cut her off when she spoke. Spriggs Dep. 89:5-8. Others in the meeting allegedly treated Plaintiff as if her "suggestions weren't good enough," and Plaintiff says even Gerhart would respond to her suggestions with an "inappropriate" stare suggesting disappointment. Id. at 89:8-18. In addition to Gerhart, Plaintiff identified warehouse foreman Steve Sanfilippo and Matthew Menendez as two other individuals who mistreated her during these meetings. Id. at 89:19-22. Plaintiff believes this treatment during the meetings amounts to racial discrimination because "[she] was the only African-American in the meeting, and whenever [she] spoke, it was always very aggressive toward [her] as opposed to whenever someone else spoke who was white, they were always just very pleasant." Id. at 92:16-20.

### ii. Lack of Communication

Plaintiff also alleges that managers at VPC Brunswick "set [her] up to fail" at her job because management did not respond

AO 72A
(Rev. 8/82)

to her emails or provide her with feedback crucial to her job performance, as they did with white employees. Dkt. no. 1, ¶ 17. Specifically, warehouse foreman Sanfilippo allegedly would not communicate with Plaintiff when she approached him about ordering various parts she needed to perform her job. Spriggs Dep. 71:14-72:22. While Sanfilippo did not supervise Plaintiff, she claims his failure to communicate with her negatively affected her job performance. Id. at 127:14-15; 128:15-129:1. Plaintiff further alleges, in contrast to how management failed to communicate with her, that other white employees were given adequate feedback to perform their jobs. Id. at 146:16-22. These employees—including Matthew Menendez, Joan McIntyre, and Estes Smith—did not perform the same job as Plaintiff (in fact, Plaintiff is unable to give any description of what these people do). Id. at 147:1-18. They were, however, along with Plaintiff, all part of "Band B," a classification of VPC employees based on their level of responsibility and salary. Id. at 147:3-4; Gerhart Dep. 20:10-11.

### iii. Singling Out and False Accusations

In addition to the inadequate communication and mistreatment at staff meetings, Plaintiff alleges that she was singled out in other ways based on her race. These "singling out" incidents consist mainly of various corrective and disciplinary measures and some managers' off-hand remarks,

including comments about the appropriateness of her work attire and what Plaintiff believes to be a derogatory comment Whitmore made during a staff meeting about her and her husband. These instances of "singling out" are motivated, plaintiff alleges, by her supervisors' racial bias against her, which she testified Taylor confirmed to her in a private conversation.

The work-attire incident involved Whitmore's and Taylor's conversations with Plaintiff about her reputedly revealing attire. Plaintiff says she first learned of her supervisors' opinions about her fashion when Taylor told her that Whitmore and Gerhart were "making comments about what [Plaintiff was] wearing, but [were] not saying [anything] to Ashley [Adams]," a white employee. Id. at 111:3-6, 113:3-8. Taylor then told her "[d]on't worry about it. They're only saying something because you're black." Id. at 111:8-9. For his part, Whitmore testified that he did in fact have a conversation about appropriate work attire with Plaintiff, but that he also had a similar conversation with Ashley Adams about her attire as well.[1] Whitmore Dep. 55:3-56:22.

Plaintiff also claims she was singled out by a comment Whitmore made at a staff meeting. In the meeting, Whitmore stated "I know you had to be away from your families for so long unless you work here with your spouse, and that's too close for

---

[1] Plaintiff testified that she did not know whether Adams was ever spoken to about her attire. Spriggs Dep. 113:18-23.

AO 72A
(Rev. 8/82)

my comfort." Spriggs Dep. 133:7-10. Plaintiff felt like this comment was directed towards here because her husband also works at VPC Brunswick. Id. at 134:4-6. However, Plaintiff called it a "snide comment," and did not state in her deposition that she thought the comment was based on her race. Id. at 134:7-10. Plaintiff's husband also testified that he did not think the comment was racially hostile. John Spriggs Dep. 12:1-3. Whitmore testified that he did not mean anything derogatory by this comment, but that he was referring to both Plaintiff and her husband along with another unmarried couple who cohabited as parents. Whitmore Dep. 60:19-61:9.

The false accusations charge in Plaintiff's EEOC complaint revolves around a dispute Plaintiff had with one of her non-management colleagues. In her EEOC charge, Plaintiff alleges that she was "falsely accused" regarding interactions with her co-workers, and that this false accusation amounted to racial discrimination. Dkt. no. 34-27, p. 3. At her deposition, Plaintiff testified that the only "false accusation" this charge refers to is one made by Joan McIntyre, the Repair Shop Scheduler. Spriggs Dep. 108:9-13. One day after Plaintiff had suggested in a staff meeting that McIntyre be assigned as Plaintiff's backup Parts Person, Plaintiff alleges McIntyre took issue with that suggestion and came into Plaintiff's office and "snapped" at her about the suggestion. Id. at 105:12-106:14.

7

Plaintiff says they were both brought to Gerhart's office, where

McIntyre falsely accused Plaintiff of instigating the quarrel.

Id. McIntyre was not Plaintiff's manager and had no authority to

terminate her or change any conditions of her employment. Id. at

105:2-4, 109:2-4.

### iv. Reporting Concerns to Management

Plaintiff claims that despite reporting this mistreatment

to Taylor, the discriminatory treatment continued. Dkt. no. 1,

¶ 19. Plaintiff specifically expressed to Taylor her belief that

her race was the reason she was being treated differently than

white employees. Spriggs Dep. 170:5-8. While Plaintiff did not

report her concerns to human resources, she complained to Taylor

"on many, many occasions." Id. at 91:13-21; 92:9-11. Plaintiff

also complained to Gerhart that she believed her treatment

during management meetings was based on her race. Id. at 87:24-

90:2.

In her complaint, Plaintiff claims Taylor responded to

these reports by telling her that Whitmore did not like her

because she is black. Dkt. no. 1, ¶ 20. It is unclear from the

record whether this alleged statement is the same statement

regarding Plaintiff's attire discussed in Part I.a.iii above or

if it is an independent statement regarding Whitmore's attitude

towards Plaintiff in general. At one point in her deposition,

Plaintiff testified that the comment regarding Whitmore's

AO 72A
(Rev. 8/82)

attitude towards Plaintiff's attire was the only comment Taylor made where Taylor said Whitmore did not like her because she was black. Spriggs Dep. 138:23-139:6. Later in her deposition, though, Plaintiff testifies that there was another occasion where Taylor told Plaintiff that some of her non-management coworkers did not like her because they were in the KKK, and also that Whitmore and Gerhart simply did not like her because she was black. Id. at 140:11-16. Apparently, the comment about some employees being in the KKK did not pertain to Whitmore and Gerhart, who allegedly just did not like Plaintiff in general because she was black. Id. at 141:21-142:2. Taylor denies ever telling Plaintiff that anyone in management did not like her because she was black or that a group of non-management employees was in the KKK and did not like her. Taylor Dep. 124:17-126:3.

Plaintiff never reported the alleged racial discrimination or purported racist attitudes of her managers to anyone except Taylor. Spriggs Dep. 141:8-21. While Plaintiff acknowledges that she could have gone to human resources with these issues, she instead brought them to Taylor. Spriggs Dep. at 94:19-95:4.

The Mercedes Benz Employee Handbook "strongly urge[s]" employees to report incidents of harassment to one's supervisor, manager, a human resources Business Partner, or General Manager of human resources. Id. at p. 11. Additionally, Plaintiff signed

9

an "Acknowledgement of Workplace Harassment Awareness Training" which states: "I have the responsibility . . . to report any instance of harassment to either my manager or to Human Resources." Dkt. no. 34-11, p. 2. Thus, while reporting harassment to human resources is an option, it is not necessarily required.

### b. Plaintiff's Termination

Plaintiff worked at VPC Brunswick until she was terminated on November 23, 2010. Gerhart informed Plaintiff that she was being terminated for her behavior. Spriggs Dep. 181:14-17.

Managers at VPC Brunswick gave various behavior-related reasons for Plaintiff's termination, including insubordination, disrespect, and ineffective communication. Gerhart Dep. 142:22-25, 143:23-144:1; Taylor Dep. 152:11-14; Caruso Dep. 100:7-25. Gerhart also testified that Plaintiff's termination was based in part on past behavior at VPC Belcamp—specifically that her previous supervisor described her behavior as "questionable." Gerhart Dep. 84:17-85:3. Additionally, Carol Caruso, a Human Resources Business Partner at the time of Plaintiff's termination, testified that although Plaintiff was terminated because of her behavior and insubordination, these reasons were subsumed within a "performance" category for purposes of documenting the termination. Caruso Dep. 100:7-22; 105:21-106:13.

AO 72A
(Rev. 8/82)

Mercedes Benz has documented several examples of Plaintiff's behavior that it used to justify Plaintiff's termination. Gerhart testified that Plaintiff routinely misconstrued simple requests and correction from management as "singling out" or attacking Plaintiff. Examples include Plaintiff's aversion to and repeated complaints about an accident report form Gerhart filled out after Plaintiff cut her hand while opening a box,[2] Plaintiff's tendency to interpret simple requests as attacks on her work,[3] and her refusal to consider constructive criticism.[4] Gerhart also noted several acts of insubordination. For example, Gerhart testified that he would often have to repeat simple requests several times before overcoming Plaintiff's objections to the instructions. Gerhart

---

[2] Plaintiff had cut her hand using a multi-tool to open a box, and Gerhart issued an "Accident/Illness Report," in which he noted that the cause of the injury was that Plaintiff had misused the multi-tool. Dkt. no. 34-14, pp. 2-3; Dkt. no. 34-15, p. 1. Plaintiff objected to filling out the report, even though filling out the form is required whenever there is an injury. Taylor Dep. 71:3-13; 71:21-72:1. Gerhart discussed the incident without using names the next day at a staff meeting, and Plaintiff allegedly threw up her hands in the air and said "oh no." Dkt. no. 34-15, p. 1. Long after the incident, Plaintiff would continually revive the issue with Gerhart, claiming that the form was filled out incorrectly or that she was "singled out," and no other employees ever had similar incidents documented. Gerhart Dep. 90:1-4; 71:19-21. Gerhart would repeatedly tell Plaintiff that she was not the only employee to have such injuries documented. Id. at 71:21-25. Plaintiff continued to dwell on the incident for more than two months. Id. at 96:12-23.
[3] On June 14, 2010, Gerhart says he emailed Plaintiff and asked her to "keep an eye out" outside after landscapers informed him that some labels were found all around the area. Gerhart Dep. 90:25-91.2. In response to this request, Plaintiff allegedly got very defensive and accused Gerhart of attacking her work and accusing her of not keeping her area clean. Id. at 91:10-16.
[4] Gerhart recalled that on November 3, 2010, he advised Plaintiff that employees may take offense to her being distant towards them by "walking with her head down and not communicating with them." Dkt. 34-15 p. 4. Gerhart says that Plaintiff responded by trying to point out the faults of other employees and generally not listening to his advice. Gerhart Dep. 94:21-23.

AO 72A
(Rev. 8/82)

Dep. at 119:24-120:3; 117:1-3. Additionally, Gerhart testified that Plaintiff would not communicate with management and her coworkers, especially regarding high-priority information.[5]

Finally, Mercedes Benz notes Plaintiff's inability to get along with and hostility towards her coworkers as a reason for her termination. Taylor testified that Plaintiff did not get along "with mostly everyone in the facility." Taylor Dep. 83:3-6. On November 18, 2010, Sanfilippo sent Taylor an email stating that two members of his team told him that Plaintiff talked down to them and that "they would rather not have to deal with her anymore." Dkt. no. 34-19, p. 2; Gerhart Dep. at 115:19-20. Many of Plaintiff's coworkers reported feeling "very uncomfortable working with [Plaintiff] closely," Gerhart Dep. 111:17-19, and Taylor says he "had an entire shop that did not want to go into the parts room [where Plaintiff worked]," Taylor Dep. 103:17-19.

These behavioral reasons the managers at VPC Brunswick give for terminating Plaintiff are mentioned in a set of notes compiled by Gerhart, see Dkt. no. 34-15, but are not listed in Plaintiff's 2009 or mid-cycle performance evaluations. Gerhart testified that "so many things happened" around November that management decided to terminate Plaintiff rather than complete

---

[5] Particularly, on one occasion, Plaintiff failed to notify anyone at the VPC that a part for a "Priority" customer's vehicle had arrived when VPC Brunswick had been waiting over one month for that item, causing a delay in shipping the vehicle to the customer. Dkt. no. 34-15, pp.3-4; Taylor Dep. 91:10-21, 92:11-13.

AO 72A
(Rev. 8/82)

the final performance evaluation. Gerhart Dep. 123:9-14; 124:3-6. Additionally, Human Resources employee Caruso sent an email to Gerhart on November 23, 2010, expressing some concern over this lack of documentation, but ultimately agreeing that termination was appropriate:

> Although I am somewhat concerned with the fact that 2009 mid-cycle year-end and this year's mid-cycle [performance review] documents do not reflect any of the behavioral or attitude issues whether in the ratings or in the comments, we do have documentation in the 2009 [performance review] in the form of behavioral ratings (no written comments) along with your recent memo to Latanya addressing the issue of working with Joan [McIntyre] and the management team notes from this year recording the numerous conversations you had with her.

Caruso Dep. 78:8-22. Caruso further testified that human resources recommends extensive documentation regarding concerns like those Plaintiff's supervisors had in regards to her behavior. Id. at 79:1-9. However, Caruso did not feel the need to investigate the reasons for Plaintiff's termination further because whether those reasons were legitimate "had already been determined." Id. at 79:16-21.

### c. The Annual Survey

Plaintiff alleges in her retaliation claim that she was fired, in part, for comments she made in an annual survey taken by VPC Brunswick employees the week before she was fired. Dkt. no. 1, ¶¶ 38, 51.

AO 72A
(Rev. 8/82)

On November 18, 2010, Mercedes Benz administered a voluntary, annual survey to obtain employee feedback in a number of areas, including management. Dkt. no. 1, ¶ 20. Employees were not asked to identify themselves in the survey. Id. Mercedes Benz would provide VPC Brunswick management with survey results in a typed summary during the first quarter of the next year. Caruso Dep. 40:14-17.

Plaintiff used the survey as an opportunity to express her belief that management was racist and discriminated against her. Dkt. no. 1, ¶ 22. Although Plaintiff testified that she does not know whether anyone at VPC Brunswick saw her handwritten responses, she testified that her managers expressed ideas in their notes and testimonies that they could only have known from reading her responses. Spriggs Dep. 178:17-19, 216:8-217:11; Spriggs Aff. ¶ 20.  Gerhart, Taylor, and Whitmore testified that local management does not see handwritten comments. Gerhart Dep. 134:11-14; Taylor Dep. 43:11-13, 44:10-11, 45:14-16; Whitmore Dep. 68:22-24. Furthermore, Mercedes Benz stated in an interrogatory response:

> The survey results were at all times kept anonymous as local management did not see any of the individual surveys or any individual employees' handwriting. A third party (the Beacon Group) was responsible for providing survey debriefs to local General Managers and their management teams.

Dkt. no. 34-24, p. 4.

AO 72A
(Rev. 8/82)

### d. Prospective Employer Allegations

Plaintiff also alleges that Mercedes Benz retaliated against her for complaining about management's discriminatory practices by thwarting her attempts to seek new employment after she was fired. Plaintiff alleged in her complaint that someone from Mercedes Benz told prospective employers that Plaintiff was terminated for "misconduct and/or other false reasons." Dkt. no. 1 ¶ 26. Plaintiff later clarified that this allegation pertains only to one potential employer—Georgia-Pacific—and that she does not know whether anyone at Mercedes Benz actually spoke with potential employers. Spriggs Dep. 160:19-21, 159:4-6. Plaintiff claims that her panel of interviewers at Georgia-Pacific found her "more than qualified," but that she did not hear back from Georgia-Pacific after the interview. Id. at 159:17-160:21. Plaintiff speculates that she lost the Georgia-Pacific position because one of her interviewers told her the company was going to ask Mercedes Benz Human Resources why Plaintiff no longer worked there. Id. at 160:1-7.

Taylor testified that he received one phone inquiry about Plaintiff after her termination. Taylor Dep. 155:1-10. He stated that he merely told the caller Plaintiff's name and position when asked if there was anything else he would like to say. Id. Taylor does not remember the identity of the caller. Id. at

15

158:1-2. Upon hanging up, he immediately notified Human Resources of the call. Id. at 155:8-10.

### e. EEOC Charges

Plaintiff filed an initial Charge with the Equal Employment Opportunity Commission ("EEOC") on January 26, 2011, where she alleges that she was subjected to harassment and racial insults. Dkt. no. 34-27. The Charge alleges that the harassment included, but was not limited to, comments about her work attire and false accusations. Id. Furthermore, the Charge notes Plaintiff's belief that VPC Brunswick management discriminated against her because she was African American. Id. On April 26, 2011, Plaintiff amended her Charge to include a claim of retaliation, alleging that Mercedes Benz retaliated against her by "informing other companies of their accusations," which left Plaintiff unable to find another job in her field. Id. On October 15, 2012, Plaintiff filed the instant action in Federal Court. Dkt. no. 1.

## II. Discussion

### a. Legal Standard

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v.

16

FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257. In employment discrimination cases, "the plaintiff will always survive summary judgment if [she] presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Sims v. MVM, Inc., 704 F.3d 1327, 1333 (11th Cir. 2013).

### b. EEOC Charge Filing Requirement for Title VII Claims

Counts I and II of Plaintiff's four claims against Mercedes Benz are brought under Title VII of the Civil Rights Act of 1964. In reviewing these two Title VII claims, the Court is limited to considering only those allegations that have "been made the subject of a timely-filed EEOC charge." Thomas v. Miami Dade Pub. Health Trust, 369 Fed. Appx. 19, 22 (11th Cir. 2010) (quoting A.M. Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1332 (11th Cir. 2000)). Furthermore,

> EEOC regulations provide that charges should contain, among other things, a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices. A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

Id. (quotations and alterations omitted). After a plaintiff has pursued her EEOC claims, a court may consider subsequent judicial claims if they "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint. Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989). However, a court may not consider "allegations of new acts of discrimination." Id. Ultimately, a court must determine if the allegations in the judicial complaint are within the scope of an EEOC investigation "which can reasonably be expected to grow out of the charge of discrimination." Id.

18

Thus, the Court must compare Plaintiff's Title VII allegations in her complaint against the allegations in her EEOC charge.[6] In Count I of her complaint, Plaintiff accuses Mercedes Benz of intentionally discriminating against her because of her race by "treating her differently in hiring, compensation, demotion and discharge than similarly situated white employees" of Mercedes Benz. Dkt. no. 1, ¶ 34. In Count II of her complaint, Plaintiff claims she made two types of complaints to her supervisors about discrimination protected by Title VII while at Mercedes Benz: first, she complained verbally to her supervisors about unlawful discrimination (Id. at ¶ 37); second, she complained about unlawful discrimination in a written, internal survey conducted by Mercedes Benz management (Id. at ¶ 38). Furthermore, Plaintiff alleges in Count II that she endured two different forms of retaliation for making these complaints: Mercedes Benz terminated her because of the complaints, and, after her termination, Mercedes Benz communicated "false and/or misleading information about her to prospective employers." Id. at ¶ 39.

Plaintiff filed her first EEOC Charge on January 26, 2011. The charge states:

---

[6] Section 1981 claims are not subject to the administrative exhaustion requirement. E.g., Mathis v. Leggett & Platt, 263 Fed. Appx. 9, 12 (11th Cir. 2008). Thus, The Court need not consider whether Plaintiff has exhausted any administrative remedies as to Counts III and IV of her judicial complaint.

> I began my employment on March 29, 1999, as a
> Mechanical helper. I was later promoted to the
> position of Parts Person. During my employment, I was
> subjected to harassment and racial insults. Such
> harassment includes, but is not limited to comments
> about my work attire being inappropriate and false
> accusations regarding my interaction(s) with co-
> workers. On November 23, 2010, I was informed by Mr.
> Gerhart, Supervisor of Operations, and Charles Taylor,
> III, Shop Foreperson, that I was discharged from my
> employment, and that I would need to contact Carol
> Caruso in Human Resources, to get further information
> regarding my discharge.

Dkt. no. 34-27, p. 2. Plaintiff concludes her initial charge by

stating that she believes she was discriminated against for

being African American. Id. Plaintiff later amended her charge,

on April 26, 2011, to include the statement: "Since my

discharge, [Mercedes Benz] has retaliated against me by

informing other companies of their accusations. Because of this,

I have been unable to obtain a job in this field, and have had

to seek employment in another field." Id. at p. 3. Plaintiff

also included in her amendment her belief that she was

discriminated against for opposing unlawful employment

practices. Id.

Mercedes Benz claims Plaintiff failed to exhaust her

administrative remedies as to both of her Title VII claims.

First, Mercedes Benz argues that Plaintiff's race-based

discharge claim (Count I) was not properly raised in her EEOC

charge because she did not allege Mercedes Benz terminated her

because of her race. Dkt. no. 30, pp. 16-17. Second, Mercedes

20

Benz argues that Plaintiff's retaliation claim (Count II) also was not properly raised in her EEOC charge because Plaintiff never claims in the charge that she was terminated for complaining about discrimination or harassment. Id.

Mercedes Benz's first argument as to administrative exhaustion fails because it holds the Plaintiff to too high of a pleading standard in her EEOC charge. In the EEOC charge, Plaintiff alleged (1) that she was discriminated against because of her race while working at Mercedes Benz, and (2) that she was eventually fired. Dkt. no. 30-27, p. 3. Plaintiff never explicitly argues a causal connection between these two allegations in her EEOC charge, but a claim that her termination itself was discriminatory could "reasonably be expected to grow out of the charge of discrimination" as she alleges in the EEOC charge. See Thomas, 369 Fed. Appx. at 22. Additionally, while Mercedes Benz suggests that Plaintiff concedes in her deposition that she was not terminated because of her race (Dkt. no. 30, citing Dkt. no. 30-3, 151:6-15), the Court's job at this stage of the analysis is to determine whether Plaintiff's judicial claims properly arise from an EEOC charge. The Court will consider the merits of evidentiary arguments later in its summary judgment analysis, but at this stage the Court finds that Plaintiff has properly exhausted her administrative

AO 72A
(Rev. 8/82)

remedies as to her Title VII discriminatory termination claim (Count I).

Additionally, Mercedes Benz's argument that Plaintiff failed to exhaust her administrative remedies as to her Title VII retaliatory termination claim (Count II) also fail. In her amended EEOC charge, Plaintiff states that since her discharge, Mercedes Benz "has retaliated against me by informing other companies of their accusations." Dkt. no. 34-27, p.3. She later concludes she was discriminated against "in retaliation for opposing unlawful employment practices." Id. These statements are enough to put Mercedes Benz on notice that Plaintiff was accusing it of retaliating against her for opposing unlawful employment practices when it allegedly thwarted her attempts to get a new job. Furthermore, while this allegation in the EEOC Charge lacks the details Plaintiff includes in her judicial complaint, there are enough details in the EEOC Charge from which the EEOC could base an investigation into Plaintiff's retaliation complaint. The details Plaintiff includes in her judicial complaint "serve to amplify, clarify, [and] more clearly focus the earlier EEO complaints," and are thus sufficient to make her judicial claim appropriate. See Wu, 863 F.3d at 1547.

AO 72A
(Rev. 8/82)

Thus, The Court finds that Plaintiff has exhausted her administrative remedies as to both of her Title VII claims, and those claims will be considered alongside her § 1981 claims.

### c. Racial Discrimination under Title VII and § 1981

Counts I and III of Plaintiff's complaint are racial discrimination claims brought under Title VII and § 1981, respectively. Title VII prohibits employers from discriminating against a person based on race. 42 U.S.C. § 2000e-2(a)(1). Additionally, 42 U.S.C. § 1981 provides that all persons in the United States "shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens," and this provision has been interpreted to prohibit employment discrimination. Addison v. Ingles Mkts., Inc., 515 Fed. Appx. 840, 841-42 (11th Cir. 2013). The Court will address Plaintiff's Title VII and § 1981 discrimination claims together as both types of claim "have the same requirements of proof and the same analytical framework." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

"A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or statistical proof." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010) (quoting Rioux v. City of Atlanta, 520 F.3d 1269, 1274 (11th Cir. 2008)). Plaintiff alleges facts which could potentially be direct evidence, but

AO 72A
(Rev. 8/82)

her argument frames these facts as circumstantial evidence. When a plaintiff bases her *prima facie* case of discrimination on direct evidence of intent to discriminate on account of race, a defendant can only rebut that evidence by showing, by a preponderance of the evidence, that it would have made the same employment decision absent the discriminatory motive. <u>Wall v. Trust Co. of Ga.</u>, 946 F.2d 805, 809 (11th Cir. 1991). However, when the *prima facie* case is based on circumstantial evidence, the defendant merely needs to articulate a legitimate business reason to have terminated the plaintiff, and the burden then shifts to the plaintiff to show that this stated reason is a pretext for racial discrimination. <u>Id.</u> Because employment discrimination defendants are required to rebut direct evidence by a higher burden of proof, the Court must first determine whether Plaintiff has established her *prima facie* case under direct evidence, circumstantial evidence, or both.

Direct evidence of discrimination is evidence "which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting <u>Damon v. Fleming Supermarkets of Fla.</u>, 196 F.3d 1354, 1358 (11th Cir. 1999)). "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor

24

constitute direct evidence of discrimination. . . . If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." Id. (quotations and internal citations omitted). The statements must prove discriminatory motive "without inference or presumption." Burrell v. Bd. Of Trustees of Ga. Mil. College, 125 F. 3d 1390, 1393 (11th Cir. 1997).

Here, Plaintiff alleges that Taylor told her that the reason Whitmore treated her differently than other employees was because she was black. Dkt. no. 1, ¶ 20; Spriggs Dep. 139:19-24. At first glance, this evidence appears to fit within the narrow bounds the Eleventh Circuit has established for direct evidence because it clearly suggests a decisionmaker's "intent to discriminate on the basis of some impermissible factor." See Wilson, 376 F.3d at 1086. However, this evidence has factual and procedural shortcomings that preclude its use as direct evidence in the Court's summary judgment analysis.

First, the factual circumstances of Plaintiff's submitted direct evidence differ from those of this Circuit's precedents, in that Plaintiff learned of Whitmore's statements through the grapevine rather than directly from Whitmore himself. Cf. Caban-Wheeler v. Elsea, 71 F.3d 837, 842-43 (11th Cir. 1996) (holding that a decisionmaker's statement directly to the plaintiff-employee that he wanted a black person to have the white

25

employee's job sufficed as direct evidence of discriminatory intent); Haynes v. W.C. Caye & Co., Inc., 52 F.3d 928, 930 (11th Cir. 1995) (holding that a decisionmaker's statement directly to the plaintiff-employee that he did not think women were "tough enough" to work in collections constituted direct evidence). With Taylor acting as an intermediary between the person offering the evidence (Plaintiff) and the decisionmaker allegedly holding the racist attitude (Whitmore), this degree of separation would require the factfinder to infer or presume that Taylor was telling the truth, that he was not projecting a racist attitude onto Whitmore, and that he had otherwise accurately repeated Whitmore's statements to Plaintiff before finding that Whitmore was racist in fact. See Burrell, 125 F.3d at 1390.

Additionally, Plaintiff failed to argue in her motion opposing summary judgment that Taylor's alleged statements about Whitmore's and Gerhart's attitudes towards Plaintiff amount to direct evidence. This reason alone is sufficient for the Court to use the statement in its analysis merely as circumstantial evidence. See, e.g., Alvarez, 610 F.3d at 1264 (declining to consider defendant-employer's alleged statement that "Cubans are dumb" as direct evidence where plaintiff failed to make that argument, "even if we assume, as we must for summary judgment purposes, that he actually said it.").

26

Having determined that Plaintiff has not presented direct evidence that supervisors at Mercedes Benz discriminated against her during her employment, the Court now analyzes her claim under one of two available "circumstantial evidence" analyses. The more common rubric enumerated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), applies when the plaintiff is relying on comparators as evidence of differential treatment. Wilson, 376 F.3d at 1087. "Under this framework, the plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally." Id. A plaintiff can meet this burden by showing that she is a qualified member of a protected class who was treated adversely and differently in her employment than similarly situated employees outside of the protected class. Id. The similarly situated employee, known as a "comparator," must be similarly situated "in all relevant respects," and must be "nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Id. at 1091.

If the plaintiff meets her burden of establishing her *prima facie* case, then there is a presumption that the employer acted illegally, which the employer may rebut by articulating a legitimate, nondiscriminatory reason for its actions. Id. If the

27

employer satisfies this burden of production, then the burden shifts back to the plaintiff, who must show that the defendant's proffered reasons for its actions are simply a pretext for discrimination. Id. While the burden of production may shift back and forth between the plaintiff and defendant, it is the plaintiff who ultimately bears the burden of showing that the defendant intentionally discriminated against her. Id. (quoting Burdine, 450 U.S. at 256).

Where the McDonnell Douglas framework is not useful for lack of comparators, courts rely on a more straightforward circumstantial evidence analysis—albeit one that requires more piercing evidence of discrimination. The Eleventh Circuit has held that the McDonnell Douglas framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case. Sims v. MVM, Inc., 704 F.3d 1327, 1333 (11th Cir. 2013).

> Instead, the plaintiff will always survive summary judgment if [she] presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. A triable issue exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.

Id. (citations and quotations omitted).

Mercedes Benz does not dispute that Plaintiff, a black female, belonged to a protected class, was subjected to an

adverse employment action through her termination, and was qualified for the position. Mercedes Benz does argue, however, that Plaintiff has failed to establish her *prima facie* case because she failed to show that similarly situated white employees at Mercedes Benz were treated differently than she was.

Plaintiff argues that she can identify white employees who were given different treatment than she was, and attempts to do so by pointing to the record. However, in doing so, she either misrepresents the record entirely or relies on comparators who are not similarly situated to her.

In her brief opposing Mercedes Benz's Motion for Summary Judgment, Plaintiff states that managers at VPC Brunswick gave white employees "the opportunity to be aware of and to improve on a particular performance or behavioral issue by counseling, reprimanding, warning, or disciplining them by means of a CAR, a PIP, or other disciplinary measures." Dkt. no. 39, p. 12. To support this argument, Plaintiff points to Taylor's deposition, where he testifies that once or twice he placed an employee on PIP perhaps two or three years ago, but Taylor could not remember those employee's names. Taylor Dep. 31:8-21. Without knowing the names, race, job descriptions, or circumstances surrounding these employees' discipline, this admission in no way establishes that there were similarly situated comparators

to Plaintiff who were outside of her protected class and received more favorable employment treatment from Taylor.

Additionally, Plaintiff points to McIntyre and Jeff Schaffer as potential comparators who were not disciplined despite engaging in "equally serious 'behavioral' issues as compared to Plaintiff." Dkt. no. 39, p. 13 n.17. Plaintiff claims that McIntyre was not disciplined for falsely accusing Plaintiff as the instigator of their altercation and that port surveyor Jeff Schaffer was not disciplined for making an improper sexual joke.

One reason this argument establishes neither McIntyre nor Shaffer as comparators for purposes of establishing Plaintiff's *prima facie* case is that, again, Plaintiff misconstrues the record in making her argument. Gerhart's deposition—which Plaintiff cites to as evidence of Gerhart's failure to discipline Shaffer—shows that he verbally counseled Shaffer regarding his conduct. Gerhart Dep. 108:24-109:23. Notably, much of the discriminatory discipline Plaintiff claims she was subjected to amounts to nothing more than verbal counseling, so it is unclear to the Court how her supervisors' handling of Shaffer's conduct is any different than how, for example, her supervisor verbally advised her to make her attire more professional. Additionally, Plaintiff's citation to the record in support of her argument that McIntyre was not properly

30

disciplined for her false accusations against Plaintiff simply shows that Plaintiff thought McIntyre was lying and says nothing about what punishment she did or did not receive. See Spriggs Dep. 105:19-106:17. As such, the Court cannot make a comparison between Plaintiff and McIntyre based on this evidence.

The second reason Plaintiff's argument that McIntyre and Shaffer are adequate comparators fails is because, even if Plaintiff's characterization of the record was accurate, McIntyre's and Shaffer's conduct is not "nearly identical" to Plaintiff's. Thus, these two employees do not meet the Eleventh Circuit's standards for comparators in employment discrimination claims. See, e.g., Wilson, 376 F.3d at 1091.

Thus, Plaintiff has not produced a similarly situated comparator to establish her *prima facie* case. The Court's analysis does not end there, however, because, as noted above, the Eleventh Circuit has held that a lack of comparators will not necessarily doom a plaintiff's case. Lockheed-Martin, 644 F.3d at 1328. But without a comparator, Plaintiff must put forth "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Id.

Plaintiff has successfully presented such evidence. Plaintiff has enumerated several instances of alleged discrimination throughout her complaint and deposition. Most of

31

these allegations do not give rise to an inference of discrimination (e.g., there is no evidence to support Plaintiff's contention that Whitmore's comment about spouses working together was racial in nature, and McIntyre's alleged false accusations do not create such an inference of discrimination by a decisionmaker because she was not a manager over Plaintiff). However, Plaintiff's allegation that Taylor told her Whitmore and Gerhart do not like her because she is black taints the trio's decision to terminate Plaintiff with a possible inference of discrimination.[7]

Mercedes Benz argues that this exception to the general requirement for a comparator only applies where there are enough "tiles" in the evidentiary mosaic amounting to "extraordinary" evidence of discriminatory intent. Dkt. no. 48, pp. 6-7. While the "mosaic" analogy may appear to imply that multiple, discreet bits of evidence are necessary to overcome summary judgment, and while those cases applying the exception to the McDonnell Douglas analysis often involved "extraordinary" evidence,[8] the Eleventh Circuit has held that, ultimately, summary judgment is

---

[7] Mercedes Benz argues that this evidence is inadmissible because it is hearsay. That argument is wrong. Because Taylor is a Mercedes Benz employee and his statement was "on a matter within the scope of" his business relationship with Mercedes Benz, his statement falls under Federal Rule of Evidence 801(d)(2)(D) as an opposing party statement and is not hearsay by definition.

[8] See, e.g., Rioux v. City of Atlanta, 520 F.3d 1269 (11th Cir. 2008) (waiving comparator requirement where plaintiff showed, through circumstantial evidence, that employer had maintained a race-based quota for employment purposes and had tracked plaintiff's demotion in records pertaining to the quota).

32

"improper" where "the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff." Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). Here, Plaintiff's allegation that Taylor told her Whitmore and Gerhart were mistreating her and did not like her because she is black raises a "reasonable inference" that the employment decisions these men made—including the decision to fire Plaintiff—were motivated by Plaintiff's race.[9] Even if the rest of Plaintiff's proffered examples of discrimination are easily dismissed as routine disciplinary measures or, at most, common rudeness in the workplace, the suggestion by one manager that two other managers base their disciplinary decisions on Plaintiff's race casts doubt on the managers' stated reasons for terminating Plaintiff. While Taylor adamantly denies that he ever made such statements to Plaintiff, the truth of the matter is for a fact finder to determine.

Because the Court has found that Plaintiff has presented circumstantial evidence sufficient for the McDonnell Douglas exception discussed in Lockheed-Martin, the Court need not proceed with the McDonnell Douglas analysis by considering

---

[9] Mercedes Benz argues that the "same decision maker" inference creates an inference of no discrimination because Whitmore made both decisions to hire and fire Plaintiff. However, Whitmore testified that he had little knowledge of the events culminating in Plaintiff's termination and relied on Gerhart's judgment on this matter. Whitmore dep. 74:22-25. Because Whitmore was the only decision maker in hiring Plaintiff, but one of three decision-makers in terminating Plaintiff, the "same decision maker" inference does not apply under these circumstances.

33

Mercedes Benz's proffered reasons for the termination, or Plaintiff's argument for whether those reasons are a pretext. It is enough that Plaintiff has presented circumstantial evidence raising a reasonable inference of discrimination for the Court to **DENY** summary judgment as to Counts I and III.

### d. Retaliation Under Title VII and § 1981

Counts II and IV of Plaintiff's complaint both allege that Mercedes Benz retaliated against Plaintiff because she engaged in statutorily protected activity. The Court will consider these two claims under the same framework because the framework for deciding retaliation claims under Title VII governs retaliation claims under § 1981. Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 978 (11th Cir. 2008).

To establish a retaliation claim under Title VII and § 1981, Plaintiff must prove that she: (1) engaged in statutorily protected activity; (2) suffered a materially adverse action; and (3) there was a causal relation between the protected activity and the adverse action. See Butler v. Alabama Dept. of Transp., 536 F.3d 1209, 1212-13 (11th Cir. 2008) (quoting Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008)). An action is "materially adverse" if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1259 (11th Cir. 2012) (citing

AO 72A
(Rev. 8/82)

*Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68
(2006)). The "causal relation" prong of the plaintiff's *prima
facie* case requires the plaintiff to show that the statutorily
protected activity was the "but-for" cause of the adverse
employment action. *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 133
S.Ct. 2517, 2533 (2013). "This requires proof that the unlawful
retaliation would not have occurred in the absence of the
alleged wrongful action or actions of the employer." *Id.* An
adverse action can occur even after the employment relationship
between the plaintiff and defendant has ended. *See Robinson v.
Shell Oil Co.*, 519 U.S. 337, 346 (1997) (holding that the term
"employees," as used in § 704(a) of Title VII, includes former
employees).

"After the plaintiff has established the elements of a
claim, the employer has an opportunity to articulate a
legitimate, nonretaliatory reason for the challenged employment
action as an affirmative defense to liability." *Goldsmith*, 513
F.3d at 1277. If the defendant meets this burden of production,
the burden shifts back to the plaintiff to satisfy her "ultimate
burden of proving retaliation by a preponderance of the evidence
and that the reason provided by the employer is a pretext for
prohibited retaliatory conduct." *Id.*

While Counts II and IV of Plaintiff's complaint are both
retaliation claims, each alleges different forms of protected

speech and retaliation. In Count II, Plaintiff alleges that she engaged in protected activity by complaining about unlawful employment practices both verbally to her supervisors and in a written survey, and that Mercedes Benz retaliated against her both by firing her and by communicating false and misleading information to prospective employers. Dkt. no. 1, ¶¶ 37-39. Count IV of Plaintiff's claim likewise alleges that Plaintiff engaged in protected activity when she complained of racial discrimination to her supervisors both verbally and in the written survey. Dkt. no. 1, ¶¶ 50-51. However, the adverse employment action Plaintiff complains about in Count IV is simply her termination. Id. at ¶ 52. Because the Counts have overlapping allegations, the Court will consider the retaliatory termination complaints of Counts II and IV together while parsing out Count II's post-employment retaliation claim for its own analysis

### i. Retaliatory Termination

Plaintiff alleges she verbally complained to Gerhart that she was being mistreated in the management meetings, and specifically told him that she believed she was being treated differently because she was black. Spriggs Dep. 87:24-90:2. She also claims that she complained repeatedly about racial discrimination to Taylor. Dkt. no. 1, ¶¶ 19-20. Taylor denies that Plaintiff ever spoke to him about racial discrimination at

VPC Brunswick. Taylor Dep. 122:8-12. The written complaints
Plaintiff refers to include the annual employee survey, which
she completed five days before her termination. Dkt. no. 39,
pp. 23-24.

Plaintiff's allegation that she was terminated for
complaining of unlawful employment practices in the written
survey fails because she cannot satisfy the causation
requirement of her prima facie case as it relates to that
allegation. Mercedes Benz presented evidence that management did
not receive the results of the survey until the first quarter of
the following year after Plaintiff's termination. Plaintiff
admitted that she did not know whether anyone at VPC Brunswick
ever saw her handwritten responses. Plaintiff's allegation that
managers at Mercedes Benz saw these responses and terminated
Plaintiff because of them amounts to mere speculation, and does
not rise to the level of "proof that the unlawful retaliation
would not have occurred in the absence of" her comments in the
survey. See Nassar, 133 S.Ct at 2533.

Plaintiff has, however, established her *prima facie* case
for her allegation that she was terminated for making verbal
complaints to Gerhart and Taylor. She testified at her
deposition that she made at least one complaint to Gerhart and
several to Taylor about racial discrimination. Additionally, it
is uncontested that her termination amounts to an adverse

37

employment action. Finally, a jury could find that these complaints were the "but-for" cause of her termination because of Taylor's alleged statement that two of Plaintiff's manager's did not like her because of her race. This evidence could reasonably support a finding that those managers would want to terminate her if she began to complain about the racial discrimination she suffered at their hands.

Because Plaintiff has established her *prima facie* case, the burden shifts to Mercedes Benz to articulate legitimate reasons for terminating Plaintiff, which Plaintiff can rebut by showing that those proffered reasons are merely a pretext for retaliation.

Mercedes Benz has articulated legitimate, non-discriminatory reasons for terminating Plaintiff. However, Taylor's alleged statement about Gerhart's and Whitmore's racial bias against Plaintiff continues to loom over much of the evidence in this case, and, if believed by a factfinder, casts doubt upon the sincerity of Mercedes Benz's proffered reasons.

Thus, summary judgment is **DENIED** as to Counts II and IV, but only insofar as those Counts allege that Mercedes Benz retaliated against Plaintiff by terminating her for the verbal complaints of discrimination. Plaintiff has not established a genuine issue of material fact as to her claim that Mercedes

AO 72A
(Rev. 8/82)

Benz fired her because of the complaints in the written survey, and summary judgment as to that allegation is **GRANTED**.

### ii. Post-Employment Retaliation

Plaintiff has not established her *prima facie* case for Count II's post-employment retaliation claim, in which she alleges that Mercedes Benz retaliated against her by making false accusations about her to her prospective employers. Plaintiff claims that someone at Mercedes Benz communicated false information to someone from Georgia-Pacific, who was considering Plaintiff for a possible job offer. Plaintiff's sole basis for this allegation is that her interviewers at Georgia-Pacific told her they were going to inquire at Mercedes Benz as to why she no longer worked there, and she subsequently never heard back from them. While Taylor testified that he received a call after Plaintiff's termination from someone asking about Plaintiff's work history, he says he only disclosed Plaintiff's name and position. He did not know who the caller was.

With this information, Plaintiff's post-employment retaliation claim is purely speculative. Nothing in the record shows that Plaintiff has satisfied the third prong of her *prima facie* case as to this claim. Taylor's admission and Plaintiff's speculation together do not establish any causal connection between her complaints to her supervisors about racial discrimination and her missed opportunity at Georgia-Pacific.

39

Thus, summary judgment as to Plaintiff's post-employment retaliation claim is **GRANTED**.

### III. Conclusion

Because there is a genuine issue of material fact as to Counts I and III of Plaintiff's claims, Mercedes Benz's motion for summary judgment as to those claims is **DENIED**. Furthermore, summary judgment is **DENIED** for Counts II and IV, but only for the allegations in those Counts that Mercedes Benz fired Plaintiff because she made verbal complaints about racial discrimination to her supervisors. Summary judgment is **GRANTED** as to those allegations in Counts II and IV that Mercedes Benz retaliated against Plaintiff because of her comments in the written survey, and that Mercedes Benz retaliated against her by making false statements to prospective employers.

**SO ORDERED**, this 26TH day of September, 2014.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)